UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

DENIKA DENNIS

    Plaintiff

    v.

DOT FOODS, INC.

    Defendant

Case No. 16

**JURY DEMAND**

## COMPLAINT

Now comes the Plaintiff, Denika Dennis, by Richard L. Steagall, her attorney, and complaining of Defendant, DOT Foods, Inc., for her claim states:

### I.
### Jurisdiction & Venue

1. Jurisdiction to hear plaintiff's claims under the Americans With Disabilities Act, 42 U.S.C. 12101 et seq. is founded under 28 U.S.C. § 1337 (a).

2. Plaintiff is a resident of Table Grove, Fulton County, Illinois. Defendant is a corporation operating a business in Brown County, Illinois. The events that are the subject of this lawsuit occurred in Brown County, Illinois. Venue exists in this court under 28 U.S.C. § 1391.

3. The occurrence complained of occurred on **November 5, 2014** in Mount Sterling, Brown County, Illinois.

## II.
## The Parties

4. Plaintiff, Denika Dennis, was employed working in the Mount Sterling Warehouse operated by DOT Foods, Inc.

5. Defendant, DOT Foods, Inc., is a corporation organized and existing under the laws of the State of Delaware operating a wholesale food distribution business with a large warehouse located in Mount Sterling, Illinois. DOT Foods employed over 200 persons at the warehouse.

## III.
## The Events

**A.  Work Positions in Warehouse**

6. Dennis was assigned to work at the DOT Foods warehouse which included the following positions.

   a. Unloading    Loading dock; take pallets off the truck and often must break down goods on pallet and place on separate pallets.

   b. Checking    Computer menu with handheld device to classify and peel off labels from roll affix and attach to product. Location in warehouse is assigned for storage and product added to inventory.

   c. Dragging    After checking, goods must be placed on pallet for transport to storage area by loader.

   d. Narrow aisle Goods on pallets are loaded on shelving.

   e. Picker    Picks up selected product for delivery to loading dock.

**B.  Dennis Injury at Work and Limitations From That Injury**

7. Dennis suffered an injury in the course of her employment on May 29,

2013. She was moving 6-10 cans from a second level slot on to a pallet and felt a popping in her shoulder and a burning sensation.

8. Dennis was off work due to the injury and underwent surgery on her cervical spine to repair a disc problem.

9. After the surgery and completion of rehabilitation, Dennis continued to suffer pain and headaches. The treating physician of Dennis, Suzanne Holthaus, M.D. returned Dennis to work on May 22, 2014 with a 20 pound lifting restriction and the pain worsened. On August 26, 2014, the 20 pound restriction was expanded to no overhead lifting.

10. On September 9, 2014, Dr. Holthaus reported that Dennis should be on a work rotation of picking no more than once a week and can do checking and dragging the remainder of the week.

11. Dennis was employed by DOT Foods working with those restrictions from September 9, 2014 until the termination of Dennis' employment by Frank Moore stating that Dennis could not longer perform the job.

## IV.
## Plaintiff's Claims

### A. Federal Statute Involved

12. At all times material, there was in full force and effect in the United States, a certain statute.

**Americans With Disabilities Act, 42 U.S.C. § 12102**

**§ 12102. Definition of disability**

As used in this chapter:

(1) Disability The term "disability" means, with respect to an individual--

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment (as described in paragraph (3)).

(2) Major life activities

(A) In general

For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

(B) Major bodily functions

For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

(3) Regarded as having such an impairment

For purposes of paragraph (1)(C):

(A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

(B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

(4) Rules of construction regarding the definition of disability

The definition of "disability" in paragraph (1) shall be construed in accordance with the following:

(A) The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.

(B) The term "substantially limits" shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008.

(C) An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability.

(D) An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.

(E)(I) The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as--

(I) medication, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aids and cochlear implants or other implantable hearing devices, mobility devices, or oxygen therapy equipment and supplies;

(II) use of assistive technology;

(III) reasonable accommodations or auxiliary aids or services; or

(IV) learned behavioral or adaptive neurological modifications.

(ii) The ameliorative effects of the mitigating measures of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity.

(iii) As used in this subparagraph--

(I) the term "ordinary eyeglasses or contact lenses" means lenses that are intended to fully correct visual acuity or eliminate refractive error; and

(II) the term "low-vision devices" means devices that magnify, enhance, or

**§ 12111. Definitions**

As used in this subchapter:

(8) Qualified individual

The term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

(9) Reasonable accommodation

The term "reasonable accommodation" may include--

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

(10) Undue hardship

(A) In general

The term "undue hardship" means an action requiring significant difficulty or expense, when considered in light of the factors set forth in subparagraph (B).

(B) Factors to be considered

In determining whether an accommodation would impose an undue hardship on a covered entity, factors to be considered include--

(I) the nature and cost of the accommodation needed under this chapter;

(ii) the overall financial resources of the facility or facilities involved in the

provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;

(iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

(iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

**§ 12112. Discrimination**

(a) General rule

No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

(b) Construction

As used in subsection (a) of this section, the term "discriminate against a qualified individual on the basis of disability" includes--

(1) limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee;

(2) participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs);

(3) utilizing standards, criteria, or methods of administration--

(A) that have the effect of discrimination on the basis of disability; or

(B) that perpetuate the discrimination of others who are subject to common administrative control;

(4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association;

(5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or

(B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant;

(6) using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity; and

(7) failing to select and administer tests concerning employment in the most effective manner to ensure that, when such test is administered to a job applicant or employee who has a disability that impairs sensory, manual, or speaking skills, such test results accurately reflect the skills, aptitude, or whatever other factor of such applicant or employee that such test purports to measure, rather than reflecting the impaired sensory, manual, or speaking skills of such employee or applicant (except where such skills are the factors that the test purports to measure).

**B.   Plaintiff's Claim**

13.   Dennis is a qualified individual with a disability in that her cervical spine surgery and the pain and headaches recurring after the surgery substantially limited her ability to participate in the major life activities of lifting and movement, she had a

record of disability, and was regarded as disabled. 42 U.S.C. § 12102 (1); 12111 (8), (9).

14.     The decision to terminate Dennis' employment made by the managerial agents of DOT Foods which Frank Moore informed Dennis on November 5, 2014 was discrimination contrary to the Americans With Disabilities Act. 42 U.S.C. § 12112 (a).

15.     Dennis' performance of the position of picking no more than once a week and can do checking and dragging the remainder of the week was a reasonable accommodation that could be performed without undue hardship to DOT Foods and had been performed from September 9, 2014 to November 5, 2014.

## V.
## Relief Requested

16.     As a direct and proximate result of the discrimination contrary to the Americans With Disabilities Act, Dennis has lost income of **$85,544** through December 31, 2016 as set forth in the Excel Spreadsheet that is Ex:1 and will continue to lose that income disparity in the future; further she has suffered mental distress for which she obtained treatment.

17.     Dennis is entitled to prevailing plaintiff's attorney's fees under 42 U.S.C. § 12117 (a) which incorporates the remedies of Title VII , 42 U.S.C. § 2000e-5 (e) that include prevailing plaintiff's attorney's fees.

## VI.
## Satisfaction of Preconditions of Action

18.     Without prejudice to the defendant's burden of raising exhaustion of remedies, Dennis alleges the following.

19.     Dennis filed a Charge of Discrimination with the Illinois Department of Human Rights on or about March 9, 2015 which was simultaneously filed with the Equal Employment Opportunity Commission under the agency work sharing agreement.

20.     The Illinois Department of Human Relations ordered the proceedings closed. The Equal Employment Opportunity Commission issued a Notice of Right to Sue on April 12, 2016 which was received by Dennis on April 14, 2016.  Dennis is filing this action within 89 days of receipt of the Notice of Right to Sue as set forth in the Excel Spreadsheet that is attached as Ex:2.

VII.
Prayer for Relief

**WHEREFORE,** Plaintiff, Denika Dennis, prays for judgment in her favor and against the Defendant, DOT Foods, Inc. in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000) plus prevailing plaintiff's attorney's fees and expenses as a part of costs under  42 U.S.C. § 12117 (a) which incorporates the remedies of  42 U.S.C. § 2000e-5 (e).

**PLAINTIFF DEMANDS A TRIAL BY JURY**

       Respectfully submitted,

       s/ Richard L. Steagall
       RICHARD L. STEAGALL,
       Attorney for Plaintiff

RICHARD L. STEAGALL
Steagall Law Firm
416 Main Street, Suite 815
Commerce Building
Peoria, IL 61602
309-674-6085
Fax 309-674-6032
nicsteag@mtco.com